IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF MARYLAND
Greenbelt Division

| | |
|---|---|
| In re | Case No. 25-19766-LSS |
| 7333 New Hampshire T Units LLC | Chapter 11 |
| Debtor._____ / | |

**DEBTOR'S SUBCHAPTER V PLAN OF REORGANIZATION**

  Comes now 7333 New Hampshire T Units LLC (the "Debtor" or "7333 NHTU"), by and through undersigned counsel, pursuant to the rigors of Official Form 425A, and provides the following plan of reorganization (the "Plan") herein:

**Background for Cases Filed Under Subchapter V**

 a. **Description and History of the Debtor's Business**

  The Debtor was formed as a Maryland limited liability company, on May 26, 2005, for purposes of managing a portfolio of investment properties located at 7333 New Hampshire Avenue, Takoma Park, Maryland 20912 (the "Property"). The majority of this activity occurred in the early days of the entity's existence, with 7333 NHTU retaining two condominium units—alongside various deeded rights—some two decades later.

  Tax liens accrued on those two condominium units, with the passage of time, and—in February 2025—a pair of suits were brought, in the Circuit Court for Montgomery County, Maryland, to foreclosure the Debtor's right of redemption. Each case resulted in a judgment being entered, against 7333 NHTU, on or about August 8, 2025.

  Just over two months later, on October 19, 2025, 7333 NHTU elected to petition for chapter 11 relief, as a small business seeking to reorganize under Subchapter V. Transparently, the purpose of this case was—and always has been—to (i) avoid the foreclosure of the Debtor's right of redemption, under chapter 5 of Title 11 of the United States Code; (ii) to ascertain what other debts—including those owed to a condominium association—might be due and outstanding; and (iii) to efficiently pay all of the debts of 7333 NHTU as part of a streamlines reorganizational process to be funded, *en toto*, by a capital contribution from the Debtor's equity interest.

  Since filing this case, the Debtor has seen claims docketed by (i) the aforesaid condominium association, totaling $30,894.98; (ii) the Comptroller of Maryland, for $12,557.00; and (iii) by the holder of the two tax certificates, for $7,143.80. The Debtor has worked with the Subchapter V trustee to analyze various operational priorities in endeavoring to reorganize and, recently, has been in touch—informally—through counsel, with the tax certificate holder.

  As intimated *supra*, this Plan proposes to pay 100% of allowed claims through the making of an equity contribution on the effective date hereof. While the Debtor does have some *de minimis* revenue correlative to a lease of one of the two condominium units, 7333 NHTU would prefer to

see all debt obligations satisfied upon confirmation of this Plan, in lieu of entering into a protracted payment plan pegged to leasehold income.

    b. **Liquidation Analysis & Secured Claim Valuation**

To confirm the Plan, the Court must find that all creditors and equity interest holders who do not accept the Plan will receive at least as much under the Plan as such claim and equity interest holders would receive in a chapter 7 liquidation. The Debtor proposes, herein, to pay all claims, in full, with interest (where applicable).

Accordingly, while there may be an interesting debate as to whether a chapter 7 trustee could fetch a similarly-lucrative distribution to creditors (while eating into available funds through the taking of a trustee's commission and the incursion of added legal fees), such is also a moot point. Creditors cannot receive more than 100 cents on the dollar and, accordingly, will bode no worse under this Plan than they would in chapter 7.

Critically, the Debtor believes the total obligations in this case—as reflected on the claims register at the time of this Plan's filing—to be $50,595.78, the majority of which is secured. The Debtor does *not* believe any other creditors to be extant, much less to be likely to docket claims herein. And 7333 NHTU is prepared, through a capital contribution, to pay the full sum of these claims, on the effective date of this Plan.

    c. **Ability to Make Future Plan Payments and Operate Without Further Reorganization**

The Debtor must also show that it will have enough cash over the life of the Plan to make the required Plan payments. Under this Plan, all creditors will be paid, in full, on the date on which their claims become allowed claims (or, if such occurred prior to closing on the sale of the Real Estate, shortly following said closing). The monies to make such payments will come an equity contribution equal to the full sum of allowed claims (inclusive of post-petition interest and fees).

**You should consult with your accountant or other financial advisor if you have any questions pertaining to these projections.**

**Article 1.**     **Summary**

This Plan under chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code") proposes to pay creditors of the Debtor from the general cash flow of the Debtor.

    The Plan provides for:     2 classes of secured claims; and

                                             1 class of an equity holder.

The Plan also provides for the payment of administrative priority claims other than those placed in classes.

**Your rights may be affected. You should read these papers carefully and discuss them with your attorney, if you have one. (If you do not have an attorney, you may wish to consult one.)**

**Article 2.**     **Classification of Claims and Interests**

**Section 2.01   Class 1**               The secured claim of West 11, LLC.

| | | |
|---|---|---|
| **Section 2.02** | **Class 2** | The secured claims of Takoma Overlook Condominium Association, Inc. |
| **Section 2.03** | **Class 3** | The Debtor's equity interests. |

**Article 3.**  **Treatment of Administrative Expense Claims and Court Costs**

| | | |
|---|---|---|
| **Section 3.01** | **Unclassified Claims** | Under § 1123(a)(1) of the Bankruptcy Code, certain administrative expense claims are not in classes. |
| **Section 3.02** | **Administrative Expense Claims** | Each holder of an administrative expense claim allowed under § 503 of the Bankruptcy Code will be paid in full on the later of (i) the effective date (as defined *infra*); or (ii) the fifth calendar say after such claim becomes an allowed claim. All professionals. including the Debtor's counsel and the Subchapter V Trustee, will need to file applications with the Court to seek approval of their fee and expenses as allowed administrative expense claims within 30 days of the effective date. Post-petition, the Subchapter V Trustee shall continue to apply for all fees in accordance with Sections 330 and 331. |
| **Section 3.03** | **Priority Tax Claims** | Each holder of a priority tax claim will be paid on the effective date; the claim of the Comptroller of Maryland is one such claim though it is also a claim the Debtor anticipates potentially disputing. Should this claim be disputed, the claim will be paid in accord with the allowances of Section 5.02 hereof. |
| **Section 3.04** | **Statutory Fees** | There are no statutory fees due in this case. |
| **Section 3.05** | **Prospective Quarterly Fees** | There are no prospective quarterly fees that will be due in this case. |

**Article 4.**  **Treatment of Claims and Interest Under the Plan**

| Class | Impairment | Treatment |
|---|---|---|
| Class 1 – West 11, LLC | Impaired | Class 1 consists of the secured, disputed claim of West 11, LLC. This creditor will retain its lien on the Property until such a time as the claim of West 11, LLC is paid in full, with interest and |

3

| | | |
|---|---|---|
| | | fees, and with such payment to occur not later than the effective date. |
| Class 2 – Condominium Association | Impaired | Class 2 consists of the secured claim of Takoma Overlook Condominium Association, Inc. This creditor will retain its lien on the Property until such a time as the claim of Takoma Overlook Condominium Association, Inc. is paid in full, with interest and fees, and with such payment to occur not later than the effective date. |
| Class 3 – Equity Interest | Unimpaired | The equity interest of the Debtor shall retain his membership in OB. |

**Article 5.    Allowance and Disallowance of Claims**

**Section 5.01    Disputed Claim.** A *disputed claim* is a claim that has not been allowed or disallowed and as to which either: (i) a proof of claim has been filed or deemed filed, and the Debtor or another party in interest has filed an objection; or (ii) no proof of claim has been filed, and the Debtor has scheduled such claim as disputed, contingent, or unliquidated.

**Section 5.02    Delay of Distribution of Disputed Claims.** No distribution will be made on account of a disputed claim unless such claim is allowed by a final, non-appealable order. The Debtor reasonably anticipates filing an objection to the claim of the Comptroller of Maryland and will delay distribution of payment to the Comptroller of Maryland until the earlier of (i) the date on which such dispute is adjudicated in the form of a final order, to which all appellate rights have been exhausted or lapsed; or (ii) the business day next succeeding the last day on which such a dispute may be filed, per Section 5.04 hereof, if no such dispute is filed within that timeframe.

**Section 5.03    Settlement of Disputed Claims.** The Debtor will have the power and authority to settle and compromise a disputed claim with court approval and compliance with Rule 9019 of the Federal Rules of Bankruptcy Procedure.

**Section 5.04    Timing for Dispute of Claims**. The Debtor will file objections to any disputed claims (except those deemed disputed on the Debtor's schedules where no proof of claim was thereafter filed) within six (6) calendar months of the effective date, *except* any objection to the claim of any governmental tax creditor may be filed at any time within ninety (90) days of the date on which such claim is filed.

**Article 6.    Provisions for Executory Contracts and Unexpired Leases**

**Section 6.01    Assumption.** The Debtor assumes the tenant lease, as noted on line 2.1 of Schedule G, as well as any and all contracts for the provision of utility services to either of the condominium units owned by the Debtor.

**Section 6.02   Rejection.** The Debtor rejects all executory contracts and unexpired leases not assumed in Section 6.01 hereof.

**Article 7.         Means for Implementation of the Plan**

On the effective date, Michael Postal will make a capital contribution to the Debtor, in a sum sufficient to satisfy the payment of all allowed claims in full. Should any claim be disputed, and should such dispute result in the allowance of said claim, Mr. Postal will then make a subsequent capital contribution, in a sum sufficient to satisfy the subject claim(s), on the date on which such claim is to be paid pursuant to the allowances of Section 5.02 hereof.

**Article 8.         General Provisions**

**Section 8.01   Definitions and Rules of Construction.** The definitions and rules of construction set forth in §§ 101-02 of the Bankruptcy Code shall apply when terms defined or construed in the Bankruptcy Code are used in this Plan.

**Section 8.02   Effective Date.** The effective date of this Plan is the first business day following the date of entry of a final order avoiding the Debtor's loss of the Property to West 11, LLC.

**Section 8.03   Severability.** If any provision in this Plan is determined to be unenforceable, the determination will in no way limit or affect the enforceability and operative effect of any other provision of this Plan.

**Section 8.04   Binding Effect.** The rights and obligations of any entity named or referred to in this Plan will be binding upon, and will inure to the benefit of, the successors, assigns and/or receiver(s) of such entity.

**Section 8.05   Default.** Should there occur a default under this Plan, creditors will have all rights provided for in the Bankruptcy Code (including Section 1112 thereof, inclusive of its allowances for the bringing of a motion to convert this proceeding to one under chapter 7 of the Bankruptcy Code), as well as the right to seek recourse for breach of contract together with such remedies as this Honorable Court may deem just and proper, sitting as a court of equity; such rights will also vest in any interested parties with Article III standing to pursue such rights. A default hereunder shall be deemed to occur if the Debtor fails to make any payment provided for by this Plan, in the full amount so provided, and does not cure such failure within thirty (30) days of being given written notice of said failure by a party in interest. A default shall also be deemed to occur if the Debtor materially violates any substantive provision of this Plan.

**Section 8.06   Disbursing Agent.** There shall be no disbursing agent hereunder and the Debtor will make all payments to creditors directly, by check or, where available, direct deposit or auto-debit.

**Section 8.07   Stamp/Conveyance Taxes.** Pursuant to Section 1146(a) of the Bankruptcy Code, any conveyance pursuant to this Plan, which may be exempted from transfer or stamp tax, shall be so exempted.

**Section 8.08   Captions.** The headings contained in this Plan are for convenience of reference only, and do not affect the meaning or interpretation of this Plan.

**Section 8.09   Controlling Effect.** Unless a rule of law or procedure is supplied by federal law (including the Bankruptcy Code or the Federal Rules of Bankruptcy Procedure), the laws of Maryland govern this Plan and any agreements, documents, and instruments executed in connection with this Plan, except as otherwise provided in this Plan.

**Section 8.10   Escheat.** If any distribution remains unclaimed for a period of 90 days after it has been delivered (or attempted to be delivered) in accordance with the Plan to the holder entitled thereto, such unclaimed property shall be forfeited by such holder. Unclaimed property shall be (i) first paid to other members of the class of the claimant not claiming said distribution, until such time as said class is paid in full; (ii) second paid to each junior class, until all classes are paid in full; and (iii) then, if and when each class is paid in full, remaining funds shall be donated to the University of Miami School of Law Bankruptcy Clinic, to be administered by Patricia Redmond, Esq. in the charitable manner she sees most fit. The University of Miami School of Law Bankruptcy Clinic works with members of the South Florida legal community to provide *pro bono* services to persons in need of bankruptcy relief, while also furnishing law students with valuable pedagogical experience in the field of bankruptcy law.

**Section 8.11   Retention of Jurisdiction.** The United States Bankruptcy Court for the District of Maryland shall retain jurisdiction of this chapter 11 case to issue orders necessary to the consummation of the Plan; to determine the allowance of compensation and expenses of professionals; to determine any and all adversary proceedings, applications and contested matters; to determine issues or disputes relating to the assumption of executory contracts and any claims related thereto; to determine disputes as to classification or allowance of claims or interests; to issue such orders in aid of execution of this Plan to the extent authorized by § 1142 of the Bankruptcy Code; to enforce the provisions of the Plan; to recover all assets of the Debtor and property of the Debtor's estate, wherever located; to resolve any dispute between or among any of the parties to this bankruptcy proceeding, to determine other such matters as may be set forth in a confirmation order or as may be authorized under the provisions of the Bankruptcy Code; to enter a final decree closing the bankruptcy case; and to correct any defect, cure any omission or reconcile any inconsistency in this Plan or confirmation order, and to take any action or make any ruling as may be necessary to carry out the purpose and intent of this Plan.

**Section 8.12   Modifications.** Modification of this Plan shall be governed by Section 1193 of the Bankruptcy Code.

**Section 8.13   Professional Fees.** Per Section 3.02 of this Plan, the Debtor must seek the approval of this Honorable Court prior to paying any professional fees incurred during the pendency of this case. Commencing on the effective date, however, the Debtor shall be free to pay any post-confirmation fees incurred by counsel, or other professionals (excepting the Subchapter V trustee), without first obtaining leave of court, and such professionals shall thereafter be excused from any requirement to seek leave of court.

**Section 8.14   Progress Reports.** The Debtor shall comply with Local Rule 3022-1(a)(2) in making semi-annual progress reports until such a time as a final decree is entered.

**Article 9.**     **Discharge**

**Section 9.01   Discharge.** The Court shall grant the Debtor a discharge pursuant to 11 U.S.C. § 1192 of all debts that arose prior to the Petition Date in this case, except any debt (1) on which the last payment is due after the first five (5) years of the Plan; and (2) debts of the kind specified in Section 523(a) of the Bankruptcy Code.

(a) If the Plan is confirmed under 11 U.S.C. § 1191 as a consensual plan, the Debtor shall receive a discharge on the effective date of the Plan; or

(b) If the Plan is confirmed under 11 U.S.C. § 1191(b), the Bankruptcy Court shall grant a discharge upon the completion of the plan payments being made in the 60th month succeeding the effective date.

**Section 9.02   Effect of Discharge.** This discharge will be effective against all creditors of the Debtor given notice of this bankruptcy case and sent a copy of this Plan, together with their respective members, managers, insiders, shareholders, officers, directors, trustees and receivers.

**Article 10.**     **Notice of Substantial Consummation**

**Section 10.01**  If the Plan is confirmed under 11 U.S.C. § 1191(a), the Debtor will file a Notice of Substantial Consummation not later than 14 days after the Plan is substantially consummated per 11 U.S.C. § 1183(c)(2).

Respectfully Submitted,

/s/ Maurice B. VerStandig
Maurice B. VerStandig, Esq.
THE BELMONT FIRM
1050 Connecticut Avenue, NW
Suite 500
Washington, DC 20036
mac@dcbankruptcy.com
*Counsel for the Debtor*