IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF MARYLAND
Greenbelt Division

In re                                                    Case No. 25-19766-LSS

7333 New Hampshire T Units LLC                           Chapter 11

    Debtor.

_____/

**OPPOSITION TO MOTION TO CONVERT OR DISMISS**

Comes now 7333 New Hampshire T Units LLC (the "Debtor" or "7333 NHTU"), in opposition to the motion to convert or dismiss, DE #27 (the "Motion"), filed by the United States Trustee (the "UST"), and states as follows:

**I.   Introduction**

The Debtor in this case failed to timely file three monthly operating reports and has also failed to initially furnish proof of insurance to the UST. One of these shortcomings has been cured and one will be cured well before a hearing on the Motion. The Debtor also acknowledges, plainly, that these are shortcomings. However, the Debtor equally posits that the absence of operating reports ("MORs") ought not invite the demise of a chapter 11 case where, as here, the error (i) is confined to a three month period; (ii) is cured prior to the docketing of this opposition brief; and (iii) comes in a case where few questions encompass the Debtor's minimalistic financial affairs. The Debtor further urges that while proof of insurance was not promptly furnished, such insurance has—in fact—been extant at all times, with the Debtor never actually failing to maintain appropriate insurance but simply being tardy obtaining proof thereof from an insurance agent.

The Debtor has *not* grossly mismanaged its estate, however. The UST suggests such gross mismanagement to be extant in light of the failure to open a debtor-in-possession bank account (a "DIP Account"). A review of pertinent law, though, reveals no such obligation to be present in a

1

case such as this, where the Debtor's monies are—and, at all times relevant, have been—fully protected by insurance from the Federal Deposit Insurance Corporation ("FDIC").[1]

In light of the foregoing, the most notable lapse evidenced by the Motion is one correlative to a failure to timely file three MORs. This is a lapse. It comes in a proceeding where the Debtor's monthly cash flow (a meager $541.66 in average monthly rental income) has been disclosed from the outset of the case on Schedule G, reiterated at an initial debtor interview, and shared once more at the meeting of creditors. But it is a lapse nonetheless and one since cured with sincere assurances of not being prone to recurrence (the January 2026 MOR has now also been filed, nine days early).

Meanwhile, this is a case where the Debtor has a viable plan of reorganization on file, looks to use the unique instrumentalities of bankruptcy to avoid a catastrophic loss of property interests to tax sale foreclosure, and believes that plan of reorganization to be on the precipice of confirmation. And for all of these reasons, as extrapolated upon *infra*, the Debtor respectfully urges the Motion should be denied or, in the alternative, the Subchapter V trustee should be placed in possession until such a time as the Debtor's plan might be confirmed.

**II.     Standard**

The Bankruptcy Code provides that matters under chapter 11 may be converted or dismissed, after notice and a hearing, for "cause." 11 U.S.C. § 1112(b)(1). The same statutory provision then goes on to non-exhaustively delineate what may constitute such cause, including,

---

[1] The UST additionally posits a failure to furnish proof of a DIP Account opening—alongside the aforementioned tardiness in producing proof of insurance—amounts to cause for conversion, since such equates to a failure to furnish documents requested by the UST. *See* Motion, DE #27, at § III(A)(iv). As noted *passim*, the Debtor disputes that a DIP Account needs to be opened (and, as such, that proof of opening needs to be furnished to the UST), and the Debtor is in the process of obtaining evidence that insurance has always been present, with a certificate of such insurance not previously being in the Debtor's possession. This argument—the last presented in the Motion—is accordingly derivatively addressed through the Debtor's separate contentions *vis a vis* a DIP Account and insurance.

*inter alia*, "(B) gross mismanagement of the estate; (C) failure to maintain appropriate insurance that poses a risk to the estate or to the public; . . . (H) failure timely to provide information or attend meetings reasonably requested by the United States trustee. . ." 11 U.S.C. § 1112(b)(4).

"The list is illustrative, not exhaustive. Courts may find cause for other equitable reasons." *In re Whetten*, 473 B.R. 380, 382 (Bankr. D. Colo. 2012) (citing 11 U.S.C. § 1112(b)(4); *In re FRGR Managing Member LLC*, 419 B.R. 576, 582–83 (Bankr.S.D.N.Y.2009)).

Once a party in interest has filed a motion seeking conversion or dismissal, and has then proceeded to establish cause (whether an enumerated or unenumerated ground), the burden shifts to the debtor:

> The court may not convert a case under this chapter to a case under chapter 7 or dismiss a case under this chapter if the court finds and specifically identifies unusual circumstances establishing that converting or dismissing the case is not in the best interests of creditors and the estate, and the debtor or any other party in interest establishes that-- (A) there is a reasonable likelihood that a plan will be confirmed within the timeframes established in sections 1121(e) and 1129(e) of this title, or if such sections do not apply, within a reasonable period of time; and (B) the grounds for converting or dismissing the case include an act or omission of the debtor other than under paragraph (4)(A)-- (i) for which there exists a reasonable justification for the act or omission; and (ii) that will be cured within a reasonable period of time fixed by the court.

11 U.S.C. § 1112(b)(2).

Additionally, in lieu of converting or dismissing a case, a court has the option of appointing a trustee if such "is in the best interests of creditors and the estate." 11 U.S.C. § 1112(b)(1).

### III. Argument

#### a. Debtors are Not Required to Open DIP Accounts When Funds are Fully Insured

The first alleged basis of "cause" to convert or dismiss this case, set forth in the Motion, is gross mismanagement, with the UST urging a failure to open a DIP Account amounts to gross mismanagement. On this point, the UST is in legal error: neither Title 11 of the United States Code

3

(the "Bankruptcy Code") nor the Federal Rules of Bankruptcy Procedure actually command a debtor-in-possession to open a DIP Account. To the contrary, the Bankruptcy Code actually provides an express, statutorily-blessed alternative in cases like this where a debtor's deposited funds pose no risk of ever flirting with FDIC insurance thresholds.

Specifically, the Bankruptcy Code does not actually mandate that debtors open new bank accounts upon filing petitions for relief, instead requiring only:

> **Except with respect to a deposit or investment that is insured or guaranteed by the United States or by a department, agency, or instrumentality of the United States** or backed by the full faith and credit of the United States, the trustee shall require from an entity with which such money is deposited or invested—
>
> (1) a bond—
>
> (A) in favor of the United States;
>
> (B) secured by the undertaking of a corporate surety approved by the United States trustee for the district in which the case is pending; and
>
> (C) conditioned on—
>
> (i) a proper accounting for all money so deposited or invested and for any return on such money;
>
> (ii) prompt repayment of such money and return; and
>
> (iii) faithful performance of duties as a depository; or
>
> (2) the deposit of securities of the kind specified in section 9303 of title 31;
>
> unless the court for cause orders otherwise…

11 U.S.C. § 345(b) (emphasis added).

The UST Guidelines, however, go a step further, requiring, *inter alia*, "[t]he debtor must immediately close pre petition bank accounts and open new 'debtor in possession' bank accounts. All receipts must flow through the debtor in possession account(s). All disbursements should be by check." UST Guidelines, p. 3, § II(A)(1).

Under Section 345 of the Bankruptcy Code, a regime is created through which DIP Accounts can be established at banks that post the requisite bond and agree to participate in the subject program. The regime, however, is plainly only applicable "[e]xcept with respect to a deposit or investment that is insured or guaranteed by the United States or by a department, agency, or instrumentality of the United States. . ." 11 U.S.C. § 345(b). And where the FDIC insures a bank, the institution may be understood to have the protections of "a department, agency, or instrumentality of the United States." *See, e.g.*, 12 U.S.C. § 1811(a) ("There is hereby established a Federal Deposit Insurance Corporation . . . which shall insure, as hereinafter provided, the deposits of all banks and savings associations which are entitled to the benefits of insurance under this chapter, and which shall have the powers hereinafter granted").

Clearly, the UST Guidelines and the Bankruptcy Code are in conflict. The former mandates a DIP Account be opened; the latter requires only insurance by the United States or a department or agency thereof. Yet the UST Guidelines do not actually carry the weight of law, nor may they serve to usurp or otherwise unilaterally extrapolate upon the rigors of the Bankruptcy Code and the Federal Rules of Bankruptcy Procedure. *See, e.g.*, *Loper Bright Enterprises v. Raimondo*, 603 U.S. 369, 400 (2024) ("In an agency case as in any other, though, even if some judges might (or might not) consider the statute ambiguous, there is a best reading all the same—'the reading the court would have reached' if no agency were involved. It therefore makes no sense to speak of a 'permissible' interpretation that is not the one the court, after applying all relevant interpretive tools, concludes is best. In the business of statutory interpretation, if it is not the best, it is not permissible.") (quoting *Chevron U. S. A. Inc. v. Natural Resources Defense Council, Inc.*, 467 U. S. 837, 843 n.11 (1984)).

The current extent of FDIC insurance on each deposit is $250,000.00. 12 U.S.C. § 1821(a)(1)(E). The Debtor's funds are—and at all times relevant have been—held at a bank insured by the FDIC. And the Debtor has not—at any time even vaguely proximate to the filing of this case, let alone at any juncture thereafter—held funds that remotely enter the vicinity of $250,000.00. The Debtor, rather, entered chapter 11 with $3,716.12 in cash on hand, *see* Schedule A/B, DE #1, at p. 9, and has solely accrued funds, post-petition, through the collection of rental income from an individual who pays $250.00 from each of his bi-weekly paychecks, *see* Schedule G, DE #1, at p. 18.[2]

Stated otherwise: the Debtor has been in compliance with Section 345 at all times relevant. To the extent the UST Guidelines conflict with the plain language of Section 345, such does not amount to carrying the force of law—let alone giving rise to "cause" under Section 1112(b)(4)(B) or Section 1112(b)(4)(H)[3]—and such accordingly cannot form the basis for the conversion or dismissal of this case.

      **b. The Debtor's Failure to Furnish Operating Reports Has Been Remedied and Should be Excused; Insurance has Always Been Present and Proof Thereof is Being Furnished**

The Debtor acknowledges having failed to timely file MORs and having not previously furnished proof of insurance. The former is facially problematic; the latter is not actually cause for

---

[2] As noted in the operating reports filed of even date herewith, DE #35-38, there have been two occasions—post-petition—where monies were transferred out of the Debtor's bank account. This appears to have been an error tied to a historic (and since-terminated) practice maintained by the Debtor and related entities. However, those funds have now been returned to the Debtor's account, *in full*, and evidence of such will appear in the February MOR and be available at a hearing on the Motion.

[3] *See, supra,* n.1.

conversion (insurance has always been present, the Debtor just has not been forthcoming with evidence thereof) but is still impolitic, impolite, and unfortunate.

As to the insurance issue: the Motion relies on Section 1112(b)(4)(C), *see* Motion at § III(A)(ii), which observes "cause" to be extant where there is a "failure to maintain appropriate insurance that poses a risk to the estate or to the public." 11 U.S.C. § 1112(b)(4)(C). As the record will make clear at a hearing on the Motion,[4] the Debtor has carried proper insurance at all times relevant but simply has not been in possession of a certificate thereof. There is no dignified design in having not formerly taken the steps requisite to obtain proof thereof, and such is something of which the Debtor is far from proud, but insurance has been in existence. And, based on a plain reading of the statute, there is thusly not "cause" for conversion or dismissal under Section 1112(b)(4)(C).

The MOR shortcoming invites a more fact-specific, contextual analysis. On the one hand, the Debtor's limited (and paltry) financial affairs have been known to all parties in interest at all times, being plainly discernable from the schedules and being palpably unremarkable. On the other hand, the MORs have—undisputably—not been timely in nature, though they have now been fully brought current.

On this front, the Debtor respectfully urges that the tardiness evidenced to-date is meritorious of being excused (albeit assuredly with the sternest of warnings). Section 1112(b)(4)(F) does not create a hardline rule where tardy filings *ipso facto* give rise to conversion or dismissal; the statutory provision, rather, relies on notions of equity, insisting "cause" to only be extant where the tardiness is not subsequently "excused." As noted by this Honorable Court:

---

[4] The Debtor will docket such in the coming days; there is not an intent to make parties in interest wait until a hearing to see the proof of insurance, which the Debtor is in the process of obtaining from its insurance agent.

7

"The non-filing of required reports must be 'unexcused,' therefore indicating that the court has discretion to determine whether the debtor's failure rises to the level of cause." *In Landmark Atl. Hess Farm, LLC*, 448 B.R. 707, 716 (Bankr. D. Md. 2011).

In the unique factual construct of this case, where (i) the Debtor's income is readily derivable from the schedules; (ii) reorganization is being pegged to a capital contribution from equity and not forward-looking cash flow; (iii) a plan was timely filed; (iv) the plan is already set for confirmation; and (v) the Debtor—as discussed *infra*—is uniquely in need of the tools of the Bankruptcy Code, it is respectfully urged the shortcoming ought to be excused. The Debtor has remedied this error before filing this opposition brief. The Debtor has also already filed the next MOR due, slightly early. And the Debtor is, candidly, chastened by these prior errors.

    **c. A Feasible Plan of Reorganization is on File and has Been Served; Appointment of a Chapter 11 Trustee Would be in the Best Interests of All Parties if "Cause" is Found to Exist**

Finally, the Debtor observes that this is a case transparently filed to remedy the loss of two condominium units, to tax sale foreclosure. The Debtor believes these losses can be avoided under *either* Section 547 or 548 of the Bankruptcy Code and, since the filing of this case, has been in touch—through counsel—with the attorney representing the tax certificate creditors. It is likely an adversary suit will be docketed (unless a Rule 9019 motion is instead docketed) well before a hearing on the Motion. The Debtor's plan expressly relies on avoiding the loss of these assets through the tools of Chapter 5.

All of which matters, instantly, only insofar as this is a case in which dismissal or conversion would be a particularly harsh penalty and one that would *not* advance the interests of other creditors and the estate. Small real estate debtors often have the ability to re-file their chapter 11 petitions with hard lessons learned from an initial case gone awry. Here, the statutory deadline to file a petition for relief, and have the Debtor avail itself of a Section 547 preference claim in

8

connection with the two at-issue losses, *may* have lapsed.[5] And dismissal would thusly work an enormous potential prejudice upon the Debtor and creditors other than the one at the helm of the state court foreclosure proceedings.

Thusly, to the extent "cause" is found to be nonetheless extant, the Debtor respectfully suggests a chapter 11 trustee ought to be appointed hereunder, to be funded by a capital contribution from the Debtor.[6] Such is a permissible remedy where "cause" is found to exist. *See* 11 U.S.C. § 1112(b)(1). And if the Debtor is not to be permitted to remain in possession, appointment of a trustee would assuredly be "in the best interests of creditors and the estate," *id.*, insofar as the appointment of a trustee would permit the already-filed plan to proceed to confirmation.

IV.   **Conclusion**

WHEREFORE, the Debtor respectfully prays this Honorable Court (i) deny the Motion; or, in the alternative, (ii) appoint the Subchapter V trustee as a chapter 11 trustee; and (iii) afford such other and further relief as may be just and proper.

*[Signature on Following Page]*

---

[5] The word "may" is emphasized because it is not clear if the two foreclosures were properly perfected in state court pre-petition. There is a possibility the final loss did not actually occur pre-petition, with such turning on various technical issues related to Maryland tax foreclosure law.

[6] It is understood the trustee would be the Subchapter V trustee. *See* 11 U.S.C. § 1183(b)(5).

9

Respectfully submitted,

Dated: February 12, 2026  By:  /s/ Maurice B. VerStandig
Maurice B. VerStandig, Esq.
Bar No. MD18071
The VerStandig Law Firm, LLC
9812 Falls Road, #114-160
Potomac, Maryland 20854
Phone: (301) 444-4600
mac@mbvesq.com
*Counsel for the Debtor*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 12th day of February 2026, a copy of the foregoing was served electronically upon filing via the ECF system on all counsel who have entered an appearance herein, including:

- L. Jeanette Rice    Jeanette.Rice@usdoj.gov, USTPRegion04.GB.ECF@USDOJ.GOV
- US Trustee - Greenbelt    USTPRegion04.GB.ECF@USDOJ.GOV
- Maurice Belmont VerStandig    mac@mbvesq.com, lisa@mbvesq.com;mahlon@dcbankruptcy.com;mac@dcbankruptcy.com;verstandig.mauricer104982@notify.bestcase.com;verstandiglaw@recap.email

/s/ Maurice B. VerStandig
Maurice B. VerStandig, Esq.