**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF MARYLAND
Greenbelt Division**

In re                                                    Case No. 25-19766-LSS

7333 New Hampshire T Units LLC              Chapter 11

    Debtor.

_____/

**FIRST AND FINAL APPLICATION OF THE
VERSTANDIG LAW FIRM, LLC D/B/A THE BELMONT
FIRM FOR PAYMENT OF LEGAL FEES AND REIMBURSEMENT OF EXPENSES**

Comes now The VerStandig Law Firm, LLC d/b/a The Belmont Firm ("VLF"), by and through undersigned counsel, pursuant to Sections 327 and 330 of Title 11 of the United States Code (the "Bankruptcy Code"), Federal Rule of Bankruptcy Procedure 2016, Local Rule 2016-1, and Appendix D to the Local Rules, and moves for approval of (i) $7,470.00 in legal fees; and (ii) $44.24 in reimbursable expenses; for a total approval of (iii) $7,514.24, to be paid under the plan of reorganization (the "Plan"), DE #26, as confirmed by this Honorable Court, DE #53, and in support thereof VLF states as follows:

**I.       Introduction**

This was a relatively straightforward chapter 11 case in which 7333 New Hampshire T Units LLC (the "Debtor") successfully utilized the allowances of title 11 of the United States Code (the "Bankruptcy Code") to avoid the loss of two condominium units occasioned by pre-petition tax foreclosure proceedings. While the case did encounter a minor wrinkle concerning the Debtor's tribulations with a debtor-in-possession bank account and tardiness docketing operating reports, those issues were resolved through mutual agreement and the matter culminated in an uneventful (and relatively expedient) confirmation hearing. The adversary proceeding at the heart of the

1

Debtor's reorganization, meanwhile, ultimately concluded nearly as simply, with a default judgment being entered and the property loss being successfully avoided.

For its efforts as the Debtor's counsel along the way, VLF now seeks compensation in accord with the rigors of the Bankruptcy Code.

## II.      Recitations Pursuant to Federal and Local Rules

Rule 2016(a)(1)(A) / Appendix D, § A(1-5): This application seeks allowance of $7,470.00 in legal fees, for 13.0 billable hours of attorney time, and reimbursement of $44.24 in expenses. The blended average billable rate for legal services is $574.62. A discussion of services rendered is included *infra* as part of the lodestar analysis and time records, memorializing the nature of all such services, are appended hereto as Exhibit A.

Rule 2016(a)(1)(B): No interim compensation was sought in this case. However, $5,218.00 was paid to VLF for pre-petition services and reimbursement of pre-petition expenses (including prepayment of the filing fee in this case).

Rule 2016(a)(1)(C): VLF is holding a pre-petition retainer of $9,782.00 (being a retainer of $15,000.00 less payment of the pre-petition fees and expenses, which were paid shortly before the case was filed), that will be paid (i) first, to the Subchapter V trustee for payment of her allowed fees and expenses in this case (upon the granting of such allowance); and (ii) second, to the retirement of part of the fees and expenses sought in this application (also upon the granting of such allowance), to the extent monies remain after payment of the Subchapter V trustee's fees and expenses. Any allowed fees and costs payable to VLF, after exhaustion of the retainer funds, will take the form of an allowed administrative claim against the Debtor's bankruptcy estate. The Debtor has indicated that the retainer will be replenished, prior to approval of this application, to ensure monies are available for the immediate payment of the fees and expenses sought herein.

Rule 2016(a)(1)(D): No previous compensation has been shared.

Rule 2016(a)(1)(E-F): There does not exist any agreement or understanding between VLF and any other entity for sharing compensation for services rendered in connection with this case.

Appendix D, § A(6-7): The necessity of the services rendered, alongside matters relevant to the determination of the reasonableness of the time expended, are discussed in greater detail *infra* as part of the lodestar analysis.

Appendix D, § A(8): By signing this application, undersigned counsel avers that it is his good faith belief the compensation requested is reasonable based upon the customary compensation and reimbursement of expenses charged by VLF and comparably skilled professionals in non-bankruptcy matters.

Appendix D, § A: An order approving the employment of VLF was entered on December 1, 2025. DE #21.

### III.   Categorization of Time Entries Since First Interim Application

VLF recorded all time in this matter in project categories. The time recorded—and compensation requested—for each such project category, is as follows:

a.  Case Administration – 4.7 Hours – $2,490.00 in fees

b.  Plan and Disclosure Statement – 1.7 Hours – $1,020.00 in fees; $44.24 in reimbursements

c.  Employment and Fee Applications – 0.6 Hours – $360.00 in fees

d.  West 11 Adversary Proceeding – 6.0 Hours - $3,600.00 in fees; $19.85 in reimbursements

### IV.   *Johnson* Factors

Familiarly, the Fifth Circuit Court of Appeals established the factors by which an attorney's request for compensation ought to be assessed, in the matter of *Johnson v. Ga. Highway Express,*

3

*Inc.*, 488 F.2d 714 (5th Cir. 1974), with the Fourth Circuit subsequently adopting these factors. *See Barber v. Kimbrell's*, 577 F.2d 216, 226 (4th Cir. 1978). VLF accordingly addresses each criterion herein:

### a.  The time and labor required

As noted *supra*, VLF devoted 13.0 billable attorney hours of time to this case. Not surprisingly, such is actually an understatement of time: attorney discretion is regularly exercised to not bill for short phone calls or e-mails, just as discretion is regularly applied to not always invoice for those miscellaneous spots of personal time when a case-centric observation pops into one's head. The whole of these 13.0 hours come in the form of legal work.

Much of the time spent on this case was applied to "ordinary" facets of a small business chapter 11 case. An initial debtor interview was attended, as was a meeting of creditors; a status conference was held, with a report being filed in advance of the same; and a plan of reorganization was prepared, amended, and ultimately confirmed.

This case did, too, rely upon the filing of an adversary proceeding and the subsequent docketing of a motion for entry of a default judgment therein. While this was far from complex in the prism of chapter 11, the adversary proceeding did require review of case law and application of some emerging tenants of precedent to an unusual fact pattern *sub judice*.

### b.  The novelty and difficulty of the questions

Most of the questions in this case were relatively mundane: the innerworkings of a subchapter V case and the confirmation of a subchapter V plan are rather common at this point in time. But the case did require attention be paid to recent case law (from this Honorable Court and the United States District Court for the District of Maryland) concerning the avoidability of tax foreclosure judgments.

### c. The skill requisite to perform the legal service properly

This is an awkward factor, inasmuch as the consideration turns on the *Johnson* Court's holding that "[t]he trial judge should closely observe the attorney's work product, his preparation, and general ability before the court." *Johnson*, 488 F.2d at 718. It stands to reason rather few attorneys will self-assess themselves in an objective manner, let alone self-assess negatively, and such may well be why this criterion is expressly dependent upon judicial observation.

Still, undersigned counsel believes he presented clean work product in this case, was appropriately prepared for hearings, and proved sufficiently capable in handling matters before this Honorable Court. There exists no delusion that another attorney would not have been able to realize the same results, though there also exists a cautious optimism that skill acquired through experience and education did directly inform the ability of the Debtor to successfully reorganize.

### d. The preclusion of other employment by the attorney due to acceptance of the case

VLF does not assert this case required the firm to turn away any other legal work.

### e. The customary fee

VLF's principal charged an hourly rate of $600 for this case, while VLF's associate attorney charged an hourly rate of $300 for this case. These figures are, anecdotally, in line with the prevailing normative range of fees charged by chapter 11 counsel in the Washington, DC metropolitan area, and are consistent with what VLF charged other debtor-side clients in the same marketplace at the time of this case's commencement.

The firm primarily operates in the District of Columbia and the District of North Dakota, normatively charging partner time at between $500 and $650 per hour to clients in the former market and between $400 and $500 per hour to clients in the latter market, with associate time traditionally being at approximately one half of the partner rate. At the time this case was

commenced, $600 per hour was the firm's standard partner rate for District of Columbia cases and was applied to this case given the geographic proximity to the District of Columbia and the almost-complete overlap of the Greenbelt and Washington, DC bankruptcy bars.

These rates are—and always have been—market competitive in nature. Certain attorneys charge more and certain attorneys charge less, but it is respectfully submitted that $600 per hour for partner time, and $300 per hour for associate time, are appropriate rates for this variety of work in the Beltway region.

### f.   Whether the fee is fixed or contingent

The fees charged in this case are uniformly based on hourly work, with all time recorded in tenth-of-an-hour increments.

### g.   Time limitations imposed by the client or the circumstances

VLF does not assert this case invited any unusual temporal limitations.

### h.   The amount involved and the results obtained

This case resulted in the Debtor avoiding the loss of $400,000.00 in real estate assets through a plan in which creditors are being paid in full (in a sum slightly in excess of $50,000.00). This is an excellent result by seemingly any estimation: creditors are being paid in full and the Debtor has effectively recuperated property for 1/8 the fair market value thereof.

### i.   The experience, reputation, and ability of the attorneys

Maurice VerStandig ("Mr. VerStandig") and Christianna Cathcart ("Ms. Cathcart") are the attorneys who worked on this case. Both devote the majority of their professional efforts to the management of chapter 11 cases, with Mr. VerStandig's case load being split between debtor, creditor, and adversary proceeding representations, and with Ms. Cathcart's case load being

6

predominately focused on debtor representations but also being inclusive of debtor representations in chapter 7 and chapter 13 matters.

Mr. VerStandig graduated from the University of Miami School of Law, *cum laude*, in 2009 and, following a one year clerkship, has been practicing law for 16 years. As noted above, his work is largely split between the District of Columbia and the District of North Dakota, though he also regularly handles bankruptcy cases in this Honorable Court and the United States Bankruptcy Court for the Eastern District of Virginia; on rarer occasions, has appeared in the Southern District of Florida, the District of Nevada, the Central District of California, and the Southern District of New York. He has been a member of the local rules committee, and standing bench/bar committee, for the United States Bankruptcy Court for the District of Columbia since 2020; he has served as an associate editor of the American Bankruptcy Institute Journal since 2021; and he was a member of the American Bankruptcy Institute's "40 Under 40" class of 2024. Mr. VerStandig regularly publishes articles on bankruptcy-centric topics and frequently speaks at regional and local bar conferences on emerging issues in chapter 11.

Ms. Cathcart is presently acting as lead reorganization counsel in multiple chapter 11 cases, including ones involving (i) an interstate trucking company (where a plan of reorganization was successfully confirmed this past week); (ii) the oldest hotel in the United States; and (iii) a real estate investment entity. She has served as lead counsel in the prior chapter 11 case of a natural person and is also currently acting as local counsel in a separate chapter 11 case involving the reorganizational efforts of a portable washroom entity. She has elicited evidence at contested hearings—and made oral argument—before multiple bankruptcy courts. Ms. Cathcart also has extensive "second chair" experience conducting multiday merits trials in at least four different

7

courts. She is a member of the American Bankruptcy Institute and is active in the International Women's Insolvency & Restructuring Confederation.

### j.   The "undesirability" of the case

VLF does not assert this to have been an undesirable case.

### k.   The nature and length of the professional relationship with the client

As is common in the realm of debtor-side chapter 11 work, VLF did not have any relationship with the Debtor before being approached about a potential bankruptcy filing. VLF has, however, represented other entities affiliated with the Debtor's principal, including (i) 41 retail stores that successfully reorganized in the District of Columbia; and (ii) a single asset real estate entity, embroiled in tort litigation, that is presently a chapter 11 debtor in the District of Columbia.

### l.   Awards in similar cases

The award sought instantly is—anecdotally—well in line with those regularly petitioned for, and awarded, in other subchapter V cases in this Honorable Court and neighboring courts.

## V.   Travel Time and Expenses

Per VLF's agreement with the Debtor in this case (which mirrors, topically, VLF's standard form of agreement), no charge has been applied for travel time, and no reimbursement is sought for travel expenses. While VLF's attorneys both reside outside the Washington, DC region, the firm is proud to have a vibrant local practice and regards travel as an overhead expenses to be born by the firm and not its clientele.

## VI.   Conclusion

WHEREFORE, The VerStandig Law Firm, LLC d/b/a The Belmont Firm respectfully prays this Honorable Court (i) finally approve and ratify the fees sought herein, in the sum of $7,470.00; (ii) finally approve and ratify the expenses for which reimbursement is sought herein,

in the sum of $44.24; (iii) grant VLF an allowed administrative claim against the Debtor's estate,

to be paid in accord with the Plan, in the sum of $7,514.24; and (iv) afford such other and further

relief as may be just and proper.

Respectfully submitted,

/s/ Maurice B. VerStandig
Maurice B. VerStandig, Esq.
Bar No. 18071
THE BELMONT FIRM
1050 Connecticut Avenue NW,
Suite 500
Washington, DC 20036
Phone: (301) 444-4600
E-mail: mac@dcbankruptcy.com
*Counsel for The VerStandig Law
Firm, LLC*

*[Certificate of Service on Following Page]*

9

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this 16th day of May 2026, a copy of the foregoing was served electronically upon filing via the ECF system on all counsel who have entered an appearance herein, including:

- Richard L. Costella    rcostella@tydings.com, myoung@tydings.com;pcoolbaugh@tydings.com
- L. Jeanette Rice    Jeanette.Rice@usdoj.gov, USTPRegion04.GB.ECF@USDOJ.GOV
- US Trustee - Greenbelt    USTPRegion04.GB.ECF@USDOJ.GOV
- Maurice Belmont VerStandig    mac@mbvesq.com, lisa@mbvesq.com;mahlon@dcbankruptcy.com;mac@dcbankruptcy.com;verstandig.mauricer104982@notify.bestcase.com;verstandiglaw@recap.email

I FURTHER CERTIFY that on the 18th day of May, 2026, a copy of the notice affixed hereto (but not this application or any other exhibit affixed hereto) is being sent via First Class Mail, postage prepaid,  to all parties on the mailing matrix attached hereto as Exhibit B, *except* that no copy is being mailed to undersigned counsel.

/s/ Maurice B. VerStandig
Maurice B. VerStandig, Esq.